This was an action of trover, brought to recover a negro woman, a slave, by the name of Marina, and her two (597) children.
The plaintiff proved that Marina was once the property of Zebulon Tarkinton, who made a parol gift of her to his granddaughter, the plaintiff, when she was an infant and *Page 407 
quite small. At the time of the gift the slave was delivered to the plaintiff by the grandfather's taking the hand of Marina and placing it in the hand of the plaintiff; and, thereupon, Joseph Tarkinton, the plaintiff's father, with whom she was living, took possession of Marina for and on behalf of his daughter, and continued that possession, repeatedly declaring that Marina was not his property, but belonged to the plaintiff, until shortly before his death, when he sold and delivered the slave to Thomas Myers, the defendant's intestate. The plaintiff was about twenty-one years of age at this trial, and was proved to have lived in her father's family till his death in 1841.
Zebulon Tarkinton, the grandfather, died in 1834, a few years after the gift. Shortly after the death of Zebulon Tarkinton, and at the sale of his personal estate, one _____ Spruill, who conducted the sale and professed to be the administrator, inquired of Joseph Tarkinton for Marina, and demanded her of him that he might sell her as the property of said Zebulon. Joseph Tarkinton refused to deliver her or permit her to be sold, declaring that she was the property of his daughter, and had been given to her by her grandfather, the said Zebulon, and referred to the witnesses who were present when it was done. One of the witnesses appealed to was the said Thomas Myers, who thereupon stated that himself and another witness were called on to witness the gift; that the said Zebulon did give and deliver Marina to the plaintiff, for a nurse, and that Joseph Tarkinton then took possession for his daughter. Marina was not present at this sale, but was then in possession of Joseph Tarkinton, and was at his house.
It was further proved that Joseph Tarkinton, while Marina was in his possession, claimed her for the plaintiff, declaring at some times that she was his daughter's property, (598) at others that she was given to his daughter by her grandfather in presence of two witnesses; and that Myers had often expressed a wish to purchase Marina, but said he could get no title, as she belonged to the plaintiff.
Myers purchased Marina of Joseph Tarkinton, in 1841, shortly before which he remarked to a witness: "I can now try and get a good title to Marina from Joe Tarkinton, for the other witness to the gift is dead, and I cannot be compelled to swear against myself."
No will of Zebulon Tarkinton was offered in evidence, and to show that the said ______ Spruill was administrator, the plaintiff offered to prove that he took possession and sold the goods and effects of said Zebulon, and acted as administrator in the settlement of his estate, and further, that at the sale referred to, *Page 408 
which was conducted by him as administrator, the said Myers became purchaser of part of the property sold. This evidence was objected to by the defendant, but the presiding judge, reserving the question of its admissibility, permitted the proof to be made. It was admitted that Myers had converted to his own use the slave Marina, and also two children, born after his purchase from Joseph Tarkinton and before suit.
It was insisted for the defendant that the plaintiff could not recover, for that she acquired no title by the gift, nor had she such an adverse possession against Joseph Tarkinton as would transfer to her the title to the said slave.
The court charged the jury that, although the parol gift in the first instance conveyed no title to the plaintiff, yet if the possession of the slave in question were held by her, or by her father for her, and, upon a demand being made by the said administrator to sell said slave, her surrender was refused, and therefore she was held by the plaintiff, or by her father (599) for her, three years adversely to the title of said administrator, the plaintiff would be entitled to recover.
The jury returned a verdict in favor of the plaintiff. Rule for a new trial for misdirection to the jury and because of the admission of improper evidence. Rule discharged, judgment, and appeal.
The plaintiff could have entertained this action against her father upon her coming of age. He could not have set up the grandfather's title against her, because he did not receive the negro to hold for the owner, whoever that might be, but he received her expressly as his daughter's, and engaged to old her as the agent of the plaintiff and for her. He could not, therefore, dispute her right, but was estopped to deny it. That estoppel was imparted to Myers, as he brought and received the slave from the father, and thus became his privy in estate; and it extends to the defendant, the administrator of Myers. The verdict and judgment were, therefore, clearly right on that ground; and as they rest upon the estoppel, arising out of the relation of bailor and bailee, or principal and agent, between the plaintiff and her father, any particular demerits of Myers are not to be regarded, since the estoppel would affect any other purchaser from the father in the same manner.
PER CURIAM. Judgment affirmed. *Page 409 
(602)